**MERRILL LYNCH, PIERCE, FENNER & SMITH INC.**
Plaintiff,

v.

**Joseph COORS, Jr., and K. Mack Robinson, Defendants.**

No. CIV.A. 04–F–1609CBS.

United States District Court, D. Colorado.

Dec. 21, 2004.

---

Stephen K. Ingebretsen, Esq., Sander Ingebretsen, Miller & Parish, PC, Denver, CO, for Plaintiff.

Tom McNamara, Esq., S. Lee Terry, Jr., Esq., Davis Graham & Stubbs, Denver, CO, for Defendant Coors, Jr.

David A. Zisser, Esq., Isaacson Rosenbaum Woods & Levy, PC, Denver, CO, for K. Mack Robinson.

**ORDER GRANTING DEFENDANT COORS, JR.'S MOTION TO STAY DISCOVERY PENDING DETERMINATION OF THRESHOLD ARBITRATION ISSUES**

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Defendant Coors, Jr.'s Motion to Stay Discovery, Vacate Scheduling/Planning Conference and Defer Fed.R.Civ.P. 16 Scheduling Process Pending Determination of Threshold Arbitration Issues, dated October 7, 2004. Defendant Coors seeks

to stay proceedings in this action, including discovery and pretrial scheduling, pending a decision on his motion to Motion to Dismiss or, in the Alternative, Compel Arbitration, filed on September 1, 2004. Plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") filed its Response to Defendant Coors' Motion to Stay on November 4, 2004, arguing that the court should not stay pretrial proceedings because its claims against Defendants Coors and Robinson are not referable to arbitration. By Order of Reference to United States Magistrate Judge, dated August 6, 2004, this matter was referred to the Magistrate Judge to, *inter alia,* "hear and determine pretrial matters, including discovery and non-dispositive motions." The court heard oral argument on the pending motion during a hearing on November 29, 2004.

The instant action is inexorably intertwined with an arbitration proceeding initiated against Merrill Lynch and a Merrill Lynch broker, James D. Pell, by Comet Enterprises, LLC ("Comet") on June 8, 2004. *See Comet Enterprises, LLC v. Merrill Lynch, Pierce, Fenner & Smith Inc. and James D. Pell,* NASD Case No. 04–04080. In that arbitration proceeding, Comet alleges that it suffered losses in excess of $6 million because of the malfeasance of Merrill Lynch and Pell relating to Comet's account at Merrill Lynch. Comet contends that Merrill Lynch and Pell breached their contract with Comet, breached their fiduciary duties, acted negligently, engaged in unauthorized transfers, and aided and abetted the fraud perpetrated by another Merrill Lynch customer, Claude Lefebvre, his associate, Dennis Herula, and their company, Watch Hill Capital Management LLC. Comet's arbitration remains pending.

Plaintiff Merrill Lynch initiated this action on August 3, 2004, alleging three claims for relief: (1) fraud—nondisclosure or concealment, (2) aiding and abetting fraud, and (3) negligent misrepresentation, nondisclosure and/or concealment causing financial loss in a business transaction. More specifically, Merrill Lynch contends that Defendants Coors and Robinson engaged in tortious conduct and fraudulently induced Plaintiff to enter into transactions with Comet by, *inter alia,* failing to disclose certain "blatantly false promises of exorbitant returns" made by Mr. Lefebvre, and by failing to disclose that Comet had been created with the express purpose of pursing "alternative" strategies and "aggressive" business opportunities and instead by representing only that Comet's business was "Trading AA or better Fixed income products." *See* Complaint, at ¶ 11. With this action, Merrill Lynch seeks to recover for damages incurred in responding to subpoenas and cooperating with the criminal investigations of Lefebvre and Herula, and for significant damages incurred in responding to Comet's arbitration actions alleging that Merrill Lynch, rather than Coors and Robinson themselves, are responsible for Comet's losses. *See* Complaint, at ¶ 12.

Plaintiff's Complaint specifically alleges that Defendant Coors was a principal of Comet Enterprises, LLC ("Comet"). *See* Complaint, at ¶ 2. Merrill Lynch further alleges, in pertinent part, that

on or about July 3, 2002, Comet opened a nondiscretionary account at Merrill Lynch. In its WCMA Account Authorization for Limited Liability Companies (the "WCMA Authorization"), which is one of the contractual forms Comet submitted with its new account documentation, Comet expressly named [Claude] Lefebvre as an "Authorized Representative," along with Coors and Robinson.

*See* Complaint, at ¶ 18.

The WCMA Authorization states that Comet Enterprises is managed by its "members" and identifies Defendant Coors

as one of those members. Under the terms of the WCMA Authorization, Defendant Coors and his fellow members certified that Comet was authorized to open a margin securities account and a "WCMA Check/Card Account." Both of these accounts were to be governed by the terms and conditions set out in pages 1 through 9 of the WCMA Agreement/Program Description Booklet. The WCMA Authorization also specifically provided that "[Comet] through the members ... and the members ... individually, hereby consent and agree to hold [Merrill Lynch] harmless for relying upon any orders or instructions received by [Merrill Lynch] from any of the above Authorized Representative(s)." Finally, Comet and Defendant Coors, individually, "agree[d] to all of the terms and conditions of the WCMA agreement" and agreed "in accordance with Paragraph 16 which may be found in the WCMA Agreement/Program Description Booklet ... to arbitrate any controversy which may arise with [Merrill Lynch]." *See* Exhibit C attached to Defendant Coors' Motion to Dismiss, and Exhibit B attached to Plaintiff's Response to Defendant Coors' Motion to Dismiss.

The terms and conditions set forth in the WCMA Agreement are also germane to the issues raised in the pending motion. Plaintiff correctly cites that portion of the Agreement which states that "[t]he customer agrees that all controversies that may arise between the Customer and [Merrill Lynch] ... shall be determined by arbitration." Merrill Lynch contends that the term "Customer" is narrowly defined

to mean "the business or organization on whose behalf the WCMA Account Authorization form is signed." *See* Exhibit D attached to Defendant Coors' Motion to Dismiss, and Exhibit C attached to Plaintiff's Response to Defendant Coors' Motion to Dismiss. According to Plaintiff, the "protections of the contractual agreement between Merrill Lynch and its customer, Comet" are available only to "Comet and Comet's members or managers."[1] *See* Plaintiff's Response to Defendant Coors' Motion to Dismiss, at 2. Merrill Lynch claims that, notwithstanding "Coors' and Robinsons' misrepresentations in the WCMA Agreement," the only "members" of Comet Enterprises are Golden Heritage, LLC and Progressive Financial Group, Inc. *See* Complaint at ¶ 16.

The Federal Arbitration Act provides that upon motion by a party, the court "shall" stay judicial proceedings if the court is satisfied that the issue *sub judice* is encompassed a written arbitration agreement. *See* 9 U.S.C. § 3. Section 4 of the Federal Arbitration Act also empowers a party "to invoke the authority of a federal district court in order to force a reluctant party to arbitrate a dispute." *Mutual Benefit Life Insurance Co. v. Zimmerman*, 783 F.Supp. 853, 865 (D.N.J.1992) (quoting *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 510 (3rd Cir.1990)). Because "the right to compel arbitration derives from a contractual right," it is generally recognized that a third-party lacks standing to compel arbitration. *Trompeter v. Boise Cascade Corp.*, 877 F.2d 686, 687 (8th Cir.1989). However, courts have rec-

---

1. It should be noted that the WCMA Agreement/Program Description Booklet states that a "Customer" subscribing to the WCMA financial service may elect to receive standard or WCMA Visa Business Signature Cards. Under the terms of the WCMA Agreement, "certain individuals are designated in the WCMA Account Opening Documents ... as authorized to use Visa Business Cards." Those persons "individually can do anything that the Customer can do under the WCMA Agreement." Presumably, those individuals would enjoy the same arbitration rights under Paragraph 16 as the "Customer," which would seem to argue against Plaintiff's very restrictive interpretation of the arbitration provision.

ognized an exception to that general rule where the nonparty is an agent of a party or a third-party beneficiary to the contract. *See Mutual Benefit Life Insurance Co. v. Zimmerman*, 783 F.Supp. at 865 and cases cited therein. *See also Roe v. Gray*, 165 F.Supp.2d 1164, 1175 (D.Colo. 2001) (holding that non-signatories to an arbitration agreement may attempt to compel arbitration where the claims against the non-signatories are based on the same factual allegations and even the same contract as claims involving the signatories); *Creative Telecommunications, Inc. v. Breeden*, 120 F.Supp.2d 1225, 1240 (D.Hawai'i 1999) (nothing that "[f]ederal courts have consistently afforded agents, employees and representatives the benefit of arbitration agreement entered into by their principals to the extent that the alleged misconduct relates to their behavior ... in their capacities as agents of the corporation"). "To determine whether an agency relationship exists, courts look to the terms of the agreement and the allegations of the complaint." *Mutual Benefit Life Insurance Co. v. Zimmerman*, 783 F.Supp. at 866.

Plaintiff must concede that the court has considerable discretion over the timing of discovery. *See, e.g., United States v. Evans & Associates Construction Co., Inc.*, 839 F.2d 656, 660 (10th Cir.1988); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). *See also* Fed.R.Civ.P. 26(c) (permitting the court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). I also acknowledge the "'liberal policy favoring arbitration' and that 'any issues concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Roe v. Gray*, 165 F.Supp.2d at 1174 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

At this juncture, the court finds good cause for Defendant's requested stay. While the court has no reason to address the ultimate merits of the parties' respective positions on the scope and applicability of the arbitration provision at issue, I find that the interests of judicial economy would be advanced by staying discovery in this action pending a decision on Defendant's dispositive motion. *Cf. Klepper v. SLI, Inc.*, 45 Fed.Appx. 136, 2002 WL 2005431 (3rd Cir.2002) (in reversing lower court's order permitting discovery, held that "requiring the parties to submit to full discovery [prior to a ruling on the arbitrability issue] may unnecessarily subject them 'to the very complexities, inconveniences and expenses of litigation that they determined to avoid'"). Based upon the present record, I do not find that Defendant's motion to dismiss has been interposed for any improper purpose, such as to harass or cause unnecessary delay. I am also mindful that resolution of the pending dispositive motion may dispose of the entire action. *Cf. Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D.Fla.2003) (citing various cases in which courts stayed discovery pending rulings on motions that would dispose of the entire case). Finally, I do not find that Plaintiff would be prejudiced by the requested stay. *Cf. Anti–Monopoly, Inc. v. Hasbro, Inc.*, 1996 WL 101277, *2 (S.D.N.Y.1996) (finding that "good cause" for a stay of discovery may be shown where the moving party has filed a dispositive motion, where the stay is for a short period of time, and the opposing party will not be prejudiced by the stay); *In re First Constitution Shareholders Litigation*, 145 F.R.D. 291, 293 (D.Conn.1991) (granting defendants' motion for a stay of discovery after finding there would be no prejudice to plaintiff, "which 'will have ample time [if the motion to dismiss is denied] to take discovery on the merits of its claims'").

Accordingly, for the foregoing reasons, Defendant Coors, Jr.'s Motion to Stay Discovery, Vacate Scheduling/Planning Conference and Defer Fed.R.Civ.P. 16 Scheduling Process Pending Determination of Threshold Arbitration Issues, dated October 7, 2004, is GRANTED. With this Order, all discovery and pretrial scheduling in the instant action is stayed pending a decision on Defendant Coors' Motion to Dismiss or, in the Alternative, Compel Arbitration, filed on September 1, 2004.