**GTE WIRELESS, INC., Plaintiff,**

v.

**QUALCOMM, INC., Defendant.**

**Civ. No. 99CV2173–B CGA.**

United States District Court,
S.D. California,
San Diego Division.

March 3, 2000.

Kathleen M. Walker, San Diego, CA, Robert F. Ruyak, Washington, DC, Brian Charles Riopelle, Richmond, VA, James D. Smith, W. Bryan Farney, Austin, TX, for plaintiff.

David Jordan Zubkoff, San Diego, CA, Thomas Marshall Wolf, Richmond, VA, for defendant.

## ORDER GRANTING QUALCOMM'S OBJECTIONS TO THE MAGISTRATE COURT'S ORDER DENYING A SHORT STAY OF NARROW DISCOVERY AND GRANTING STAY OF DISCOVERY OF QUANTIFICATION OF CERTAIN DAMAGES

BREWSTER, Senior District Judge.

### I. Introduction

On December 3, 1999, Defendant Qualcomm ("Defendant") brought before the Magistrate Court a motion for a partial stay of discovery of the quantification of damages pending this Court's ruling on Defendant's motion for summary adjudication, currently set for hearing on May 8, 2000. Specifically, Defendant argues that Plaintiff GTE Wireless ("Plaintiff") is barred from recovering damages and as a result, it would create an undue burden on Defendant to allow discovery of potential damages before ruling on summary adjudication of that issue.

On December 22, 1999, the Magistrate Court denied Defendant's motion to stay discovery on the quantification of damages. The Magistrate Court found that it was not immediately evident that Defendant would prevail on its motion for summary adjudica-

tion and that it would not be in the best interests of efficiency to stay discovery. In response to this Order, Defendant timely filed objections on January 14, 2000 pursuant to Federal Rule of Civil Procedure 72(a). On February 11, 2000, Plaintiff filed its opposition to Defendant's objections.

### II. Standard of Law

#### A. Procedure to Object to Magistrate Court's Order of December 22, 1999

After the Magistrate Court renders an order regarding a nondispositive, pretrial matter, the party adversely affected may serve and file objections to that order. Fed. R.Civ.P. 72(a). The party's objections must be served and filed within ten (10) days after being served with a copy of the Magistrate Court's order. *Id.* Here, including the time tolled under Federal Rule of Civil Procedure 6(a) (computation) and 6(e) (service via U.S. mail), Defendant's objections were timely.

#### B. Grounds for Modifying or Setting Aside Magistrate Court's Order

After an objection is timely filed with the District Judge to whom the case is assigned, the District Judge shall set aside a nondispositive order if the order is found to be clearly erroneous or contrary to law. Fed. R.Civ.P. 72(a); *see also Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir.1991).

#### C. Grounds for Granting a Stay of Discovery

The Ninth Circuit Court of Appeals has stated that "the [D]istrict [C]ourt has wide discretion in controlling discovery. Such rulings will not be overturned [by the Ninth Circuit] unless there is a clear abuse of discretion." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir.1988), *citing Ellis v. Brotherhood of Ry., Airline & S.S. Clerks*, 685 F.2d 1065, 1071 (9th Cir.1982).

The Court may limit discovery so "that certain matters [may] not be inquired into, or that the scope of disclosure or discovery be limited to certain matters" upon a showing of good cause or where " . . . justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense ..." Fed.R.Civ.P. 26(c)(4). A factor the Court may consider is whether the Court is convinced that the plaintiff will be unable to state a claim for relief. *Wood v. McEwen, Jr. et. al.,* 644 F.2d 797, 801 (9th Cir.1981), *citing B.R.S. Land Investors v. United States,* 596 F.2d 353 (9th Cir.1979).

■ Along with balancing the harms of staying discovery, the Court should "... take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an *immediate and clear possibility* that it will be granted." *Feldman v. Flood,* 176 F.R.D. 651, 652 (M.D.Fla.1997) (emphasis added). In doing so, "... the moving party bears the burden of showing [immediate and clear possibility] and reasonableness." *Id. citing Howard v. Galesi,* 107 F.R.D. 348 (S.D.N.Y.1985).

## III. Analysis

### A. Contentions of the Parties

Defendant argues that the Magistrate Court made four separate errors. First, Defendant contends that the Magistrate Court incorrectly used an "immediately certain" standard of success on summary adjudication instead of "clear possibility." Defendant argues that the Magistrate Court held Defendant to a stricter standard than legally permissible for the likelihood of it prevailing on summary adjudication and therefore, the order was in error. Second, argues Defendant, regardless of the standard utilized by the Magistrate Court, the motion to stay discovery should have been granted. Given the Federal Circuit's interpretation[1] of what constitutes actual notice for the purposes of patent infringement, Defendant argues that Plaintiff's claim for damages fails. Third, Defendant · argues that the Magistrate Court's holding that the stay requested would hinder the efficiency and progress of the case was *incorrect.* Defendant contends that there are more than enough liability and

claim construction issues to occupy the parties if a stay for damages were granted and thus, the progress of the case would not be substantially hindered. Fourth, Defendant argues that the Magistrate Court did not appropriately balance the harm and benefit of each party's positions when deciding whether to grant the motion to stay. Defendant argues that it would be severely prejudiced if it had to divulge damages information to Plaintiff because of the difficulty in producing the information, the information's highly confidential and proprietary nature, and the certainty that such information would be useless in the event that Defendant is successful in its motion for summary adjudication.

In opposition, Plaintiff contends that Defendant's motion for summary adjudication is meritless. Plaintiff alleges that Defendant received actual notice of the alleged infringement through oral notice and offer of a license at trade shows by Robert Zicker, Director of Intellectual Property Management for GTE Service Corporation, and through written notice and offer of a license to the Telecommunications Industry Association.[2] Second, Plaintiff argues that the Magistrate Court's "immediately certain" standard of success on summary adjudication was not in error. Essentially, Plaintiff argues that regardless of the words a court may use to describe a standard to stay discovery upon the adjudication of a summary adjudication motion, the substance of the standard correctly hinges upon the likelihood of success on summary adjudication. Plaintiff argues that the exact words the Magistrate Court may have used is irrelevant since the motion for summary adjudication will be meritless.

Third, Plaintiff argues that a stay in discovery on damages would prolong the lawsuit and result in inefficiency. Because of a stay, Plaintiffs would have to play "catch up" regarding damages discovery. Fourth, in balancing the hardships, Plaintiff argues that a

---

1. The Federal Circuit has exclusive appellate jurisdiction on claims arising from patent law and therefore its authority is binding on this Court. *See* 28 U.S.C. § 1295(a)(1).

2. In a letter dated July 12, 1996. Plaintiff sent a letter to the Telecommunications Industry Association ("TIA") notifying "... that a license will be made available to applicants under reasonable

terms and conditions that are demonstrably free of any unfair discrimination Patent No. 4916728—Cellular Telephone Unit with Prioritized Frequency Allocation and Patent No. 5159625—Method of Selecting the Cellular System with which a Cellular Mobile Radio Telephone Communicates, which we believe will be practiced by entities conforming to the System Selection Preferred Roaming standard."

stay would cause undue prejudice because, allegedly, damages discovery would still be necessary if Defendant is successful on its motion for summary adjudication. Moreover, Plaintiff argues, granting the stay would severely and impermissibly restrict the manner by which Plaintiff could prosecute this lawsuit. Plaintiff contends that the likelihood of a settlement would be diminished because of the inability of the parties to measure the value or worth of the case. Finally, Plaintiff argues that if a stay were allowed, there would be additional discovery disputes because Defendant would have too much discretion to control which information it may deem as pertinent and relevant.

### B. "Immediately Certain" and "Foregone Conclusion" v. "Clear Possibility"

The Magistrate Court was placed in a difficult situation when confronted with Defendant's original motion. The Magistrate Court, properly and in accordance with law, had to take a "preliminary peek" at the merits of Defendant's motion for summary adjudication. Obviously, this is no simple task because the Magistrate Court had to weigh the merits of the motion without passing judgment on them.

■ In doing so, the Magistrate Court asked the question of whether it was "immediately evident" or a "foregone conclusion" that Defendant would succeed in its motion. The "immediately evident" or "foregone conclusion" standard implies that there be a virtual certainty, or in other words, nearly a "one hundred percent chance" that the motion will succeed. On the other hand, "clear possibility," is significantly less stringent than "immediately evident" or "foregone conclusion" and indicates that Defendant's motion is nearly below but does not necessarily

exceed a "fifty percent chance" of success. If the chance of success is above a "fifty percent chance," then the chance of success would properly be characterized as "probable" rather than "clearly possible." At the same time, if the chance of success was far below "fifty percent," then the likelihood of success would not be "clearly possible" but rather "unlikely." With that defined, the Court will continue its analysis.

### C. Is the "Immediately Certain" Standard Clearly Erroneous?

■ In *Feldman v. Flood*, the case the Magistrate Court primarily relied upon, the court found that "it may be helpful to take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear *possibility* that it will be granted." *Feldman*, 176 F.R.D. at 652 (emphasis added). However, the Magistrate Court utilized an "immediately certain" or "foregone conclusion" standard to decide whether a stay of discovery should be granted.

The problem with the "immediately certain" or "foregone conclusion" standard is that it implies, as already mentioned, that a stay can only be granted if there is little doubt that the dispositive motion will be granted. However, *Feldman* suggests that the dispositive motion need only have a *clear possibility* of success when deciding to grant a stay of discovery.[3] The Court holds that it was clearly erroneous for the Magistrate Court to use the "immediately certain" or "foregone conclusion" standard.

### D. Is Defendant's Motion for Summary Adjudication Meritorious?[4]

Under 35 U.S.C. § 287(a), patent owners may notify a party believed to be infringing

---

**3.** The Ninth Circuit has offered no specific guidance on the standard to be employed on a motion to stay discovery pending the outcome of a summary judgment motion other than that a court may, at its discretion, stay discovery pending the adjudication of that motion. *See Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir.1988). The Court finds the "immediate and clear" possibility standard set forth by *Feldman* to be appropriate here.

**4.** The Court makes note that the motion at hand is not a motion for summary adjudication. Addi-

tionally, the Court is well aware that discovery has not been completed and that other factual allegations may arise throughout the discovery process. However, given the nature of the motion at hand, the Court must take a preliminary glimpse into the merits with the currently available facts. With that said, the Court in this Order is not making a final finding into the merits and therefore, is open to revisiting this issue along with other allegations that may arise during discovery when they are actually litigated during Defendant's motion for summary adjudication or at trial.

on its patent in one of two ways: (1) by fixing on the patented article the word "patent" or the abbreviation "pat." together with the number of the patent or (2) if the patented article is not "marked" according to the just-mentioned procedure, by notifying the alleged infringer of the infringement. 35 U.S.C. § 287(a). In the case at hand, it is undisputed that Plaintiff has not "marked" the patent at issue. As a result, the only legally recognized way for Defendant to have been notified of the alleged infringement is if Plaintiff actually notified Defendant of the alleged infringement. Plaintiff states that it notified Defendant of the alleged infringement in two ways: (1) through a letter to the TIA, and (2) through oral notice made by Robert Zicker at various trade shows.

### 1. 1996 Letter to the TIA

Defendant relies on *Amsted Industries v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed.Cir.1994), for the proposition that Plaintiff's letter to the Telecommunications Industry Association ("TIA") cannot constitute actual notice under 35 U.S.C. § 287(a). In *Amsted,* the Federal Circuit was clear that in order for actual notice to be given to an alleged infringer, the notification given " . . . must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the *affirmative* communication of a specific charge of infringement by a specific accused product or device." *Id.* at 187 (emphasis added). As a result, the Federal Circuit held that a letter by the plaintiff in the *Amsted* decision that notified the entire industry of its patent ownership and a general warning not to infringe did not constitute notice under § 287(a). *Id.* The Federal Circuit concluded that the letter was neither specifically charged nor directed to the defendant. *Id.*

In opposition, Plaintiff interprets *Amsted* as holding only that a letter cannot constitute notice if it does not specifically state which conduct constitutes the believed infringement. In contrast to the facts in *Amsted,* Plaintiff argues that the letter given to the TIA puts on notice particular action, obtain-

ing a license, that Defendant must take if it wishes not to infringe upon Plaintiff's patent.

■ Plaintiff also relies on an unpublished case, *AccuScan, Inc. v. Xerox Corporation,* 1998 WL 603217 (S.D.N.Y.1998), to fuel its argument.[5] In *AccuScan,* the Southern District of New York agreed with the *Amsted* decision that notice must be of infringement and not simply the existence of the patent. *Id.* at \*10. In that case, the Southern District of New York held that a letter given to the alleged infringer met the standard of notice for patent infringement because it notified the alleged infringer that its conduct may be infringing upon the patent at issue. Similarly, in *Wokas v. Dresser Industries, Inc.*, 978 F.Supp. 839, 844 (N.D.Ind.1997), the Northern District of Indiana held that a letter from the patent owner to the alleged infringer constituted notice because the letter at issue " . . . affirmatively state[d] [the patent owner's] belief that [the alleged infringer] was currently in the process of marketing or planning to market specific products . . . " which infringed on the patent at issue. *Id.* at 845. Citing this authority, Plaintiff argues that its letter to the TIA was far more clear than the letters in *AccuScan* and *Wokas* and as a result, clearly constituted actual notice for the purpose of § 287(a).

■ In reviewing the authority regarding what constitutes notice, the Court finds Plaintiff's argument unpersuasive. At this time, the Court does not agree that Plaintiff's letter to the TIA comports with the standard for notice of § 287(a), nor is the letter similar to the factual situations in *AccuScan* and *Wokas.* Plaintiff's letter to the TIA was informational in nature. It informed the TIA that it is the owner of the patent at issue and that if anyone wishes to use it, that person or entity may do so by applying for a license that would be issued free and clear of any unfair discrimination. The letter did not specifically allege that Defendant was infringing upon Plaintiff's patent, nor was the letter directed towards Defendant. Defendant was not even mentioned in the letter. In sum, the letter was not an affirmative

5. "Unpublished decisions of the Ninth Circuit have no precedential authority" and should not be cited by advocates. *Territory of Guam v.* *Hung Yang,* 850 F.2d 507, 511 (9th Cir.1988), *overruled on other grounds by U.S. v. Keys,* 133 F.3d 1282 (9th Cir.1998).

communication of infringement upon Defendant and was purely informational in nature. As such, the Court finds that Defendant has shown it has a clear possibility of at least showing that the TIA letter did not constitute written notice under 35 U.S.C. § 287(a).

### 2. Plaintiff's Various Oral Notifications of Infringement

█ In addition to the letter to the TIA, Plaintiff argues that Defendant received actual notice of infringement during various industry trade shows. Specifically, Mr. Robert Zicker, Director of Intellectual Property Management for GTE Service Corporation, declared that he visited numerous trade shows between 1996 and 1998 where he discovered that Defendant's displays at the shows allegedly infringed upon Plaintiff's patent. As a result, Mr. Zicker allegedly spoke to Plaintiff's unnamed representatives at the trade shows and offered them a license in order to abate the infringement. Given this factual allegation, Plaintiff argues that the Magistrate Court correctly found that "it is not a foregone conclusion" that Defendant would be successful on its motion for summary adjudication.

Without inquiring into whether the oral notification could ever properly constitute notice pursuant to § 287(a), the Court finds that these bare allegations are not likely to create a material issue of fact if heard on summary adjudication. Mr. Zicker's declaration does not allege which specific trade shows he attended, specifically with whom he talked, who these representatives were, and whether they were representatives that had any authority at all to bind Defendant. Given the lack of specificity of Mr. Zicker's claims and even assuming that the Zicker declaration is admissible,[6] the Court finds that Defendant has demonstrated that it has a clear possibility of precluding damages. *See generally Wood,* 644 F.2d at 801.

Because the Court makes a preliminary finding that neither the oral notification nor the letter to the TIA is likely to constitute notice under § 287(a), the Court finds that it was clearly erroneous for the Magistrate Court to find that "it is not immediately evident that Defendant will prevail on its motion for summary judgment."

### E. Balancing of Harm

█ In addition, Defendant argues that the Magistrate Court did not properly balance the harm of staying discovery. As already discussed, the Court has the authority to limit the scope of discovery if allowing such discovery would create "annoyance, embarrassment, oppression, or undue burden or expense" to one of the parties. Fed.R.Civ.P. 26(c)(4). In determining whether any of these factors apply, the Court should inevitably balance the harm of staying discovery with the benefit of allowing discovery to continue. *See Feldman,* 176 F.R.D. at 652.

The Court finds that here, if discovery regarding the quantification of damages were to continue, Defendant would be significantly burdened. Defendant would be forced to turn over highly sensitive and proprietary information to Plaintiff and Defendant would have to sort through a vast amount of information. If Defendant's motion for summary adjudication is granted, then everything discovered in regards to the quantification of certain damages will have been wasted. Additionally, the quantification of damages has no probative value whatsoever in determining whether Plaintiff would successfully defeat Defendant's summary adjudication motion.

In turn, if discovery were stayed, some inefficiency might arise, but the Court finds that there are more than enough issues outside of damages such as liability and claim construction that can be pursued during a stay of discovery. Plaintiff asserts that a stay in discovery of the quantification of damages would result in additional discovery disputes and a confusion of issues. Specifically, by allowing a stay, Plaintiff argues that Defendant would drastically limit the information it produces during discovery because Defendant could assert that the sought information relates to damages. In the absence of any evidence supporting that allegation, the Court is not inclined to anticipatorily suspect bad faith conduct by Defendant when responding to its discovery requests from

---

6. Defendant contends that Mr. Zicker's allegations are inadmissible because Plaintiff failed on numerous occasions to inform Defendant of Mr. Zicker's allegations.

Plaintiff. If it occurs, the Magistrate Court can handle it. Ultimately, the Court finds that on balance, the harm of allowing discovery to continue regarding the quantification of certain damages significantly outweighs the harm of staying discovery.

Although the Magistrate Court recognized the propriety of balancing the harms in deciding whether to stay discovery, the Magistrate Court focused almost exclusively on whether the success of Defendant's motion for summary adjudication was "immediately certain" to be successful.

### IV. Conclusion

The Court holds that the Magistrate Court committed clear error in holding that it was not "immediately certain" or a "foregone conclusion" that Defendant's summary adjudication motion would be successful. As a result, the Magistrate Court committed clear error in failing to more fully balance the harm of allowing discovery against the harm of a stay. Defendant has met its burden to show good cause and reasonableness to stay discovery pending the adjudication of Defendant's motion.

Therefore, the Court ORDERS that Defendant's objections to the Magistrate's order be GRANTED and a stay on the discovery of the quantification of certain damages be GRANTED pending Defendant's future summary adjudication motion, scheduled for May 8, 2000.

IT IS SO ORDERED.